Good morning, Your Honor, and may it please the Court, Jonathan Singer for Gilead with me today is my colleague Craig Countryman. Chevron and its progeny are an important part of our legal system, there's no doubt about that. But Chevron is not a license to substitute administrative rule for legislative intent. If you look at the actions of Gilead here I heard Justice Scalia summarize it a few months ago as close enough for government work. Well, what we're looking at here, the Patent Term Adjustment Statute, and Gilead's actions here did not delay anything at the PTO. Gilead filed an IDS after the revision. Well, where do you get that from? I mean, it's certainly not in the statute, it's not in the regulation. You get it from legislative history? The facts of the case, I get from the facts of the case as far as the... Well, I understand your argument about the facts, but where does the requirement to find actual delay come from? It's not in the language of the statute, it's not in the language of the regulations. I would disagree, Your Honor, that it's not in the language of the statute. The statute talks about the three guarantees, each of those refer to PTO delay. The adjustment that is then made to the PTO is then made to the PTO delay. That's what we're talking about here, is the adjustment to the PTO delay. And in the limitations, which is what we're talking about, each of the PTO guarantees refers to the limitations under Paragraph 2. When we go to the limitations, we refer right back to the reduction of the period of adjustment of the term. That's the PTO delay. So if we look at the legislative enactment by Congress, it's talking about PTO delay, and then the subtraction from the PTO delay, the natural... We're talking about C delay, and that's where an applicant, quote, failed to engage in reasonable efforts to conclude prosecution of the application. That doesn't talk about actual delay, right? It begins with, Your Honor, with the period of adjustment of the term of a patent under Paragraph 1. But that's already been calculated under Paragraph 1. That is correct. You didn't calculate that. You subtracted from that, Your Honor. Based upon the applicant's conduct. Based upon the applicant's conduct as it contributes to conclusion of prosecution of the application. Let me ask you a hypothetical. Okay. If you think of any of the legislative history you have here talking about delay, do you think the statute would still clearly require the result, an interpretation you want us to reach? I do, because again, we're talking about... Even though the word delay is not in the sections that we're trying to interpret. It talks about conclusion of prosecution of the application in terms of the reasonable efforts to do that. That is... Is that all focusing on the applicant's conduct? But it's not the applicant's conduct divorced from anything. It's not any unreasonable behavior of the applicant to do whatever it is. It has to be unreasonable behavior by the applicant that delays. That's the whole point of the statute. And yes, you bring up the legislative history, Judge Hughes, and it's very powerful. I mean, the legislative history... Delays what? Pardon me? Delays what? Delays conclusion of prosecution of the application. That's what the delay we're talking about. Actually delays the PTO from doing anything. Do you have to look at the whole theory to see whether the ultimate result was delayed? No, I mean, did it actually delay the PTO from processing the application? And when you look at the... So, in your view, the conduct that the applicant here engaged in could have delayed the prosecution. Absolutely. In your view, this statute requires the PTO not just to establish categories that might delay, but they have to make a fact-by-fact determination in every single case whether there was actual delay that was attributable to your client or to the PTO, and which actually ended up delaying the term of this patent or the grant. I don't think it's a fact-by-fact determination. I think what... Well, how else would you get at it if you say... I mean, you acknowledge that this category is correct, that resubmission of new evidence or whatever it was here could delay, but just in the fact of this case, it didn't. How else would we determine whether that category was properly invoked or not in a particular case unless we looked at the fact-by-fact? Judges, if you look at the other regulations, you will see they don't use such a blunt tool in determining delay. They go to actual delay. So, for example... So, your answer then seems to be that, yes, the PTO does have to engage in a mini-fact-finding on each specific... on this category to determine whether there was delay or not. Well, to be fair, PTA is a mini-fact-finding for each application. They have a computer program that they program, and it calculates for each application. The facts related to that application comes out the other end with the PTA. So, I don't think it's something different, Judge Hughes. I think it's the same. This seems like it would be very hard to calculate as a computer program, because you would have to hypothetically know if... when the examiner might have started or whether this delayed or whether it didn't delay because of the late submission. I mean, it really does seem that it would require something more than simply pressing a button. Well, the PTO, in this case, you can see, tracks all sorts of... I mean, I'm not here to argue policy about how to do this. I mean, we did offer, in our brief, explanations that it wouldn't be very difficult. It's not a difficult administrative burden. And we see in the difficult administrative burden, we need to do what? To have the examiner keep a wall about the submission came in and delayed me for an hour and a half? I think... How is this supposed to be done? If you want... if the PTO wanted to do it that way, Your Honor, I think we simply projected a tick box. The examiner would simply say, I've begun consideration. But if you look at the other regulations that the PTO has passed, where there is a possibility for delay and a possibility for no delay, for example, in the Notice of Allowance one, the preliminary amendment, they actually look at, did it actually delay? In C6, where the preliminary amendment is received 30 days before an office action, they don't penalize the applicant unless that resulted in the PTO having to... Yeah, but that's a situation where there are actual deadlines and you can look at the deadline. This is... There's no deadline here or simple mechanism for determining where there's delay without knowing what the examiner was doing on a minute-by-minute basis. I would... We're talking six-minute increments, quarter of an hour? Your Honor, I would disagree with that. I think if you look at the... Another example would be simply what we argued below. We did offer the tick box, but if you don't like that, the treatment of IDS is when there's a restriction requirement. It's very different than the treatment of IDS is when there's not a restriction requirement. Gilead was in the position here and it simply sat on the IDS and actually caused more delay and waited to give the IDS to the patent office with its response to the office actions. There would have been no penalty to it, even though it sat on as the government... Why did it sit on it? Pardon me? Why did it sit on it? I don't think the record... I asked that question myself. I don't think it's sitting on anything. It's simply a situation... You just said they sat on it. Your Honor, the government said we sat on it. If Gilead had sat on, if you will, let's say they knew about it the day before it was submitted, if they had not submitted it, if they had not submitted it and held on to it and submitted it with the response to the office action that the government, the PTO, filed, there would have been no penalty. And yet, Gilead would have provided that IDS four months later to the PTO. And the solution there is simply to not treat... To treat simply provisions of IDS before... So the regulation's invalid because the PTO didn't go far enough? The regulation's invalid because it's not coupled to actual delay. And when the PTO passed the regulation, it talked about actual delay. The submission of this additional paper will cause delay. And here we're talking about a penalty that doesn't bear any relationship either to the actual, if any, delay caused. I mean, the restriction requirement response judge was sitting in the mail room for three weeks, right, until it was forwarded to the examiner. And Gilead is punished... It would be incredibly burdensome for the PTO to have to decide in every specific case. I mean, how would you know that? Would you get an affidavit from the examiner? Would you call witnesses? I mean, these are not the kind of things that it seems to be necessary to determine whether the applicant has failed to engage in reasonable effort. Why can't they establish a category that says, if you do something late, we can presume that it's caused some delay? In some cases, it may. In some cases, it may not. First off, it wasn't late. That's it. No. I think this is the problem. If your position is that PTO, under the statute, has to engage in a fact-specific inquiry of actual delay in every case, that's your position. I don't see anywhere in the statute that it says that. It says it can be reduced if the applicant fails to engage in reasonable efforts. And they can prescribe a category of what they think are reasonable efforts or not. I agree with you, but they have to be coupled to actual delay. The question is why? Because that is... Certainly, the unwillingness to get into the kind of fact-finding that Judge Hughes is talking about is the very sort of reason that you have bright-line rules, and that supports a bright-line rule. So what's wrong with a bright-line rule that says we're not going to look at actual delay but we're going to look at the applicant's efforts and make a decision based on that? What is it that says they have to look at the actual delay, they have to engage in this internal inquiry? Is that what Congress commanded? I mean, Congress commanded a statute about PTO delay. But that was... This is the whole point of the statute, that the PTO may delay... This is sort of a Gestalt approach? No, it's not a Gestalt approach. This is what Congress intended in enacting the statute. And if you look at the language of the statute and the legislative history and the PTO's enactment of regulations, you will see each of them, except for this one, this is C-1, are not coupled to actual delay by the applicant, actually causing the PTO to be unable to consider the application. An actual delay would require, in each case, a very burdensome fact-specific inquiry. I think you're on a dangerous slope here, Mr. Singer. If you impose on the PTO Judge Dyke's idea of law office billing procedures, you may find that it's delayed by hundreds of years. And I would never do that, Judge Wallach. I would never want to impose that on anyone living through it myself. All I'm trying to get at is that when we go to the statute... Let me ask you this. Sure. If you reject your idea that the PTO has to make a fact-specific inquiry in each case, why isn't this part of the statute? Because the penalty, Judge Hughes, so now you're into sort of step two, if you will. The penalty bears no relationship to the delay. But doesn't it bear a cost relationship? I don't think it does. Can't we presume that in some cases, when you get a late commission from an applicant, it's going to delay the office? And in some cases, it's not. I think you can say that in some cases it can, in some cases it can't. But the penalty bears no relationship to the delay that it might cost. So just taking your hypothetical. So in this case, it doesn't present the world's greatest facts. But if you think about it, in a lot of cases where the examiner delays in issuing an office action and an IDS comes in, I think we talked in the district court about a delay of a year, for example, for the office action, and the IDS comes in at month 11, the applicant is punished for the entire 11 months that the IDS didn't come in. But it's in the applicant's control. This is not a situation in which he didn't have the information. But even, I don't think it would actually matter whether the information was in the applicant's control. There are certain exceptions where it does. But there are many, many instances where IDSs are submitted based on, for example, litigation, happen to be disclosed, where it's not in the applicant's control. And so, to answer Judge Hughes' question, the actual penalty, if you go to the second step, doesn't bear a relationship to the actual delay cost. But I will save my remainder of the time. Thank you, sir. Mr. Moskowitz? Good morning. May it please the Court? In enacting the patent term adjustment statute, Congress clearly delegated authority to the PTO to prescribe regulations establishing exactly what constitutes a failure to engage in reasonable efforts to conclude prosecution. Congress could have defined this term in the statute, but it chose not to, and expressly delegated to PTO, the expert agency, to determine based on its experience and expertise in examining millions of patent applications, what was the best way to apply this statute. And the focus of this statute is on the applicant's action. And very clearly in the text of the statute, it says that the reduction is for a failure to engage in reasonable efforts to conclude prosecution. Gilead has argued repeatedly about this actual delay requirement that doesn't appear in the statute. And it also doesn't say that the reduction would be for the delay caused by a failure to engage in reasonable efforts. Instead, it says the reduction specifically is the period during which the applicant failed to engage in reasonable efforts, which is clearly focusing on the applicant's action. And PTO here has reasonably construed this statute in a way that uses exemplary categories, that gives bright line rules, which is both easily administrable, but also is fair to the applicant because they know ahead of time what conduct does and does not qualify as something that will reduce their PTA. And so, this particular kind of argument over what is and isn't applicant delay, I mean, what is or isn't actual delay, the statute doesn't talk about it. And I have no idea what that would actually mean. It would strike at the heart of many of the other categories. We would be seeing a series of cases where parties would say, well, in my particular case, notwithstanding that in some other cases it causes delay, in my case it doesn't. And it would open up an enormous amount of challenges and fact-finding and parties seeking to try to challenge examiners for saying how much delay was caused because it's pretty subjective as to how much delay did any particular thing cause that particular examiner in any given examination. And mind you, the examiner has more than 100 applications before them at the same time. And so, we think here that the regulation is well within the broad bounds of discretion from Congress. Part of your interest seems to be, articulated interest, seems to be that the examiner has to balance those 100 or so cases and has to allocate time based on professional expectations. Absolutely. You know, when they have that many applications, different examiners have entirely different processes for reviewing that broad amount of applications. They might look at the application at the beginning when a new reply comes in and they might say, well, I have this amount of time to get it done by the four-month deadline. And then, lo and behold, more information comes in in the middle and everything is different then. And so, the only way that the examiners can do their job and can do their job within the four-month time frame is to know and get everything at the front and say, look, when you submit a reply, you submit everything with the reply and piecemeal replies are just not what PTO wants and what examiners should not have to deal with. You know, that's the way the process is set up. It's one party's turn and then the other party's turn and you should submit everything with your reply. It should be a complete reply and not part of your reply. And that, I think, is the C-7 and the C-8 regulations are just intended to do that. Is there any further questions? Thank you, Mr. Moskowitz. Mr. Singer, you have a little time left here. Just one final point here. That was simply when, when we look at Chevron, we are trying to figure out what Congress delegated. That is the inquiry that Chevron commands. And when we look at the actions here of the PTO, I would simply urge the Court to look at that the penalty that is assessed does not bear a relationship to Congress's concern of PTO delay. And here, I mean, couldn't have a better example. Regardless of what you think of what Gilead did, that Gilead is punished for patent, for losing patent term for a response to restriction crime that was sitting in the mail room for three weeks. And if it had been longer, Gilead would have been punished the full time. So I urge you not to stop at Chevron Step 1. At Chevron Step 2, the penalty imposed by the PTO does not bear a relationship to what Congress was concerned about, the conclusion of prosecution of the application. Thank you. Thank you, Mr. Singer. Thank both counsel. The case is submitted. That concludes our session for today.